Mr. Nace, pleased to hear from you. May it please the Court, Your Honor. Good morning. My name is Jonathan Nace of Nidell & Nace. Your Honors, what we have here is this is a case where, first of all, the sale of patients' medical records is undeniably exempt from the sales tax code in the State of Maryland. There is no question under 11-211 that these records are not to be taxed. However, also under the Code of Maryland, there is a limit on the amount that can be charged for the sale of these records. In this case, at this time, it was 76 cents per page. Healthport charged more than that, the appellee in this case. Because Healthport did that, he violated the Maryland Consumer Protection Act and he gave rise to other statutory and common law claims. Ultimately, though, this is not just a taxpayer seeking a sales tax refund because this is a case about illegal charges that were made. We're not seeking that. What are you seeking? We're seeking the excess amount of 76 cents. And admittedly, Your Honor, that is the amount that was charged in the sales tax. And you're suing the collector? I would say that Healthport is not the tax collector, Your Honor. And you're suing the vendor? Yes. And the Maryland legislature has seemed to indicate by statute that if you're going to sue for a refund or an erroneously paid tax, that you should sue the tax collector as opposed to the vendor. I think what you're saying, go through this administrative process as opposed to a judicial suit. Yeah. I mean, I'm reading from the statute, Section 13901. And I would say that, Your Honor, as we argued and as we say in our briefs, Mr. Gwodes cannot access 13901. Healthport Technologies is not the tax collector, is it? Healthport Technologies is not the tax collector. The comptroller is the tax collector. I agree. The comptroller is the tax collector in this case. But you're suing the vendor? That's right. Based upon the consumer transaction that occurred here. So, the administrative remedy is... You're suing for an erroneously imposed tax? Yes. That was in violation of the Health General Act and is an unlawful trade practice. Why is that covered by Section A2? So, Section 13901 is the administrative remedy section. Pays to the state a tax that's erroneously, illegally, or wrongfully assessed. So it says, and if I may, Your Honor, Section A, a claim for refund may be filed with the tax collector who collects the tax fee or charge by a claimant who, one, or in this case really two, erroneously or pays to the state a tax fee or charge. No one can suggest that Mr. Gloves paid anything to the state. But weren't those monies eventually remitted to the state? Well, we don't, Mr. Gloves doesn't know. And if we were, and it's an excellent point, Your Honor, because I cannot sit here and tell you that it wasn't. I can't sit here and tell you that it was. The Maryland Tax Code makes the retailer the trustee for the state. The money collected does not belong to the retailer. The money collected is state money collected by the retailer as trustee for the state. And the retailer then remits it to the state. And that's the ordinary course of business. I agree. So when you sue the trustee as the agent for the state, there is a whole process. There's a form and everything else that's provided by the state in order to get an illegally collected tax in that fashion. There is a way to do that. But let's sort of play all that out. First of all, as we said, the trustee, the vendor is the trustee for the state, is not the tax collector. Well, he's the agent. It doesn't matter whether he's a tax collector or not. You are seeking to interrupt, restrain, or alter the collection of a tax which is done through the trustee under Maryland's state law. The retailers are designated trustees. They're required by law to collect the tax. They are designated trustees by statute. And they have to remit those monies which belong to the state to the state after the transaction. This retailer is not allowed to do that. This tax is exempt from that. You're challenging that because there's an exception to sales tax for records. But you're still, it's still the sales tax collected by any retailer is collected as a trustee for the state. Those monies do not belong to the retailer when they're collected as a tax. You have not alleged that they labeled this as a tax fraudulently in order to get extra money. You're basically saying they shouldn't have charged a tax. Your Honor, what you're saying is correct. But I think what you're doing is you're looking at it from, we're looking at it totally from health court's view here. The other side of the. The statutory scheme. Right. What you're doing is the statutory scheme set up by Maryland designates every vendor, directs them by law to collect a sales tax. And that sales tax belongs to the state. It doesn't belong to the vendor. The vendor has designated a trustee, an agent for the state, collects a sales tax and remits it to the state. Now, in this case, the trustee collected a tax allegedly that was not supposed to be collected. The answer is you have to go back to the state and get a refund from the state because that's where the money went in the ordinary course, unless you allege facts that this was fraudulent where they made up the tax just to get more money. But there's no evidence of that. The evidence, I presume, in the ordinary course is they collected the tax and remitted it to the state as an accounting. I don't know how they do it, at the end of the month, the end of the day, whatever, and remit all that to the state. And you say that was illegally collected. Well, fair enough, but there's a whole process to undo that. The state provides an exclusive process for doing that. To follow up on that, it seems to me an odd posture for this state that you're asking a federal court to decide what kind of tax a state sovereign can or cannot collect. What you want to do is catapult the federal court into the middle of a state tax collection process when the state itself, through its own laws, has provided an administrative remedy. And I assume there may be some kind of court appeal or whatever to the Maryland courts. But just as a matter of federalism, isn't it better to allow, since this is a state tax and just a question that resides right at the heart of state sovereignty, isn't it better to let the processes in Maryland resolve this matter rather than the federal court just jump in to something that's a little bit out of our bailiway? Well, so Your Honor, I mean, the case was filed in state court and it was removed by the defendant and this issue of the Tax Injunction Act was raised. Our position has been this is not a state tax we're trying to get back. I hear Your Honor saying that you feel that it is. Do you agree in your overall position that we do not have jurisdiction under 1330, what's the... The Tax Injunction Act. 1341. 1341. If you're going to find that this is a question of sales taxes, whether they were... This is a sales tax procedure, I completely agree there's no subject matter jurisdiction in the federal courts to hear this case. What we have said is that because Mr. Gloves... Why are you appealing? Because isn't that where Judge Titus came out? No, Judge Titus entered a decision on the merits. He had to get into the merits to decide the jurisdictional question, didn't he? I don't believe so. I mean, the jurisdictional question is always the threshold question that the court has to decide. I understand, but under 1341, the condition for jurisdiction is where the state provides a plain, speedy, and efficient remedy may be had in the courts of the state. Right. And so he has to make that determination, and he has to also determine whether this is a suspension or restraint, and, of course, whether this falls under the comity doctrine for the damages type thing. And he concluded, I gather, he was only going to decide whether the court had jurisdiction. So I think that should have been the end of it, and I think he should have stopped there and said, we don't have jurisdiction. What aspect do you think went beyond what he should have done? Well, he declared that this, under Bowman v. Goad, or he found under Bowman v. Goad, that there was an exclusive administrative remedy. Well, doesn't he have to do it under the expressed language of 1341? No, the question under the tax injunction. It says where a plain, speedy, and efficient remedy may be had in the courts of such state. Sure, but that includes the courts. He doesn't have to determine if it needs to be administrative or judicial. All he has to determine is whether or not the plaintiff's suit is seeking state money collected by taxes and if there is a plain, speedy, and efficient recourse for the plaintiff in the state. That's all he has to determine. And if he had done that, he should have remanded the case for lack of subject matter jurisdiction. And that's exactly what we brought up. Well, I tend to agree with you that that's the question, but I don't understand how this doesn't fall right within the core of the exclusive administrative remedy that the Maryland legislature has set forth because, as Judge Niemeyer points out, the retailer or the vendor is essentially a trustee, is not the tax collector. And I don't see anything more to this than asking whether this is a case to which the Maryland tax code and the administrative remedy applies by its own terms. So, first of all, I would say, to the last point there, again, it does not apply to Mr. Gloves. He cannot access the administrative remedy. But there are serious questions, and I know Your Honor is familiar with the doctrine of exclusive remedies in the state of Maryland and whether or not it's exclusive, whether or not the remedy is primary, and whether or not it's concurrent. And this judge determined that the presumption was exclusivity. I haven't combed his whole opinion, but he said that the tax code, he's referring to the state tax code, provides very clearly a process for a claim for refund being filed by a claimant who pays the state a tax fee, interest, or penalty that is erroneously, illegally, or wrongly assessed or collected in any manner. And that's exactly parroting the elements of jurisdiction under 1341. I'm reading from page 216. Yes, thank you. 216, okay. And so he's doing that by relying upon this Bowman v. Goad case. It doesn't matter what he's relying on. The statute says if the state provides in a remedy for the collection of the taxes, it has to be actually a plain, speedy, and efficient remedy. The federal courts don't have jurisdiction, and it's this. And, of course, the Supreme Court has adopted the comity position with respect to damages for the same idea. The idea is we are not going to get involved in that aspect of state sovereignty. That's a matter of state law, and Congress has denied the federal court's jurisdiction to get involved in that. Your Honor, what I would say is that the question of whether the remedy provided is exclusive, administrative, or concurrent is a question of procedural law that is outside the bounds of whether or not the court had jurisdiction. That is not the same thing as whether or not the Tax Injunction Act applies. Certainly, a state court could come to some conclusion that on the procedure that must be followed, this might have to go through. A state court could decide that. But the question here for the Tax Injunction Act is whether or not the plaintiff is seeking to take money from the state tax coffers and whether or not there's a plain, speedy, and efficient recourse for him in the state. That's it. That is the question. If he answers both of those questions yes, it should be remanded to the state circuit court. And in this case, he went beyond that. But where did he go beyond it? Can you show it to me? Yes. So I can just understand what you're arguing. Yes, if I may. Thank you. First of all, on page 219, he addressed it briefly. But on line 10, he says, the remaining allegations of the complaint are in effect irrelevant because of my conclusion that the exclusive remedy that the plaintiff has in this case is to seek a remedy from the comptroller. That's beyond the jurisdictional question, what the remedy is. That's a question of procedural and state law. But, of course, the court actually cited the remedy earlier and cited the statute and didn't say it was exclusive. But I don't see what the problem is in observing that it's exclusive. That was not the holding. The holding was whether there was a plain, speedy, efficient remedy. And on page 216, that's exactly what the court held. The court on 219 is responding to your arguments. But where he's making his holding is on page 216. And, well, I understand your argument. Your argument is that the fact he slipped in the word exclusive in there in responding to your argument made the whole ruling erroneous. No, I mean, respectfully, Your Honor, I disagree. And I'll say this statute itself, the statute, the administrative remedy statute, does not say that it's the exclusive remedy. It doesn't matter. It doesn't matter. In other words, the court said there is an efficient remedy. That's what the court's first holding was. This is an oral statement from the bench. And Judge Titus said there is a remedy provided by state law, and he cited the section. He didn't use the word exclusive. Later, he slipped in the word exclusive because of the Bowman case. But I don't see how that undermines his decision. He basically concludes that this is a tax matter and should be taken up in the state courts and not because of 1341 in the federal court. If I may, Your Honor, just briefly. Again, on page 216, where you're looking, appendix 216. Thank you. Thank you. Your red light is on. I'm sorry. I apologize. Mr. Barr. Thank you, Your Honor. And good morning. My name is Alec Barr, and I do represent the Appellee Health Court. Your Honors, the district court's dismissal of the complaint should be affirmed. The plaintiff has no private cause of action against Health Court to recover the $23 in sales tax he seeks because, as Judge Titus found, Maryland has provided an exclusive administrative remedy that has admittedly not been exhausted. And even if that were not so, the plaintiff simply fails to state any plausible causes of action against Health Court for fraud, for constructive fraud, for negligent misrepresentation. If we allow this suit to go forward, would we be permitting taxpayers to just bring all kinds of retailers into federal court, department stores, 7-Eleven stores, every kind of car dealership? I mean, the sales tax is such an ubiquitously imposed levy. Is there any reason to think that the effect of this suit could be limited purely to providers of health or trustees of health care records? None that I can see, Judge Wilkinson. I mean, that's absolutely the case. And as Your Honor observed, we are required as a vendor of a service and a product. Our services are both. We're an information release company. The point is that collecting a sales tax for the state, which you're obligated under state law to do, doesn't expose you to litigation. That's exactly right, Your Honor. It's simple. I mean, otherwise, you know, the litigation engine is just off to the races. And private parties collecting levies that they're required to do conscientiously under state law are going to be hauled into court. And notwithstanding the Maryland state statutes, which say no. I disagree. I agree completely, Your Honor. I cannot disagree with you. It's a very dangerous case from that perspective. And the plaintiff attempts to avoid that by trying to characterize this as somehow special because it deals with medical records. And there's just absolutely no authority for that proposition. Your Honor is absolutely correct. Well, it may or may not be, but I'm not sure we're entitled to resolve that question, are we? Your Honor, I think. You collected on the record, indisputably, you collected a sales tax. Correct. With which they disagree. Correct. That's all the further we have to go, isn't it, to apply 1341? I think that's correct, Your Honor. What I would say is this case should be dismissed for a host of reasons. The first reason, I would suggest, is because there is an administrative remedy that is exclusive, clearly, under 150 years of Maryland law. So whether it's exclusive or whether it's efficient, it's got to be followed. Correct. And it was followed in this case. So I would say that this case should be dismissed, to answer Judge Niemeyer's question, for a host of reasons. There's an exclusive administrative remedy that wasn't exhausted. So even if the Court has jurisdiction, the case should be dismissed for that purpose and for that reason. We're not ‑‑ you're suggesting we don't have to rule under 1341? I think you do have to rule. I would say, Your Honor, the posture of this case is interesting in the sense that there are overlapping reasons to dismiss. I would refer, Your Honor, to the Walmart case. The steel company case in the Supreme Court has indicated we ought to address the power of the Court first. Okay. Well, if, Your Honor, were to address the power of the Court first, we would have no problem with a ruling that a federal court under the tax ‑‑ You won't affirm the dismissal of the complaint. I think we ‑‑ you can affirm the dismissal of the complaint. Here's the reason, and I think the Walmart case in the Seventh Circuit addresses this. The Tax Injunction Act applies when a party attempts to interfere with a state governmental entity applying sales tax. So if the gravamen of their complaint against us was that this entire state tax of some type was improper and they were bringing that case against a governmental agency, that would be a TIA‑type case. They asserted that the TIA deprives the District Court of jurisdiction after admitting that CAFA gave jurisdiction since it was brought as a class action case. And so they brought a private cause of action against us, a private party, to get the money from us, from Health Board. And under those circumstances, we would submit, Your Honor, that CAFA provided jurisdiction for the federal court to determine that there is an exclusive administrative remedy and that the case should be dismissed on that basis. But there are multiple roads to Rome. I mean, all roads lead to Rome here. That's correct, Your Honor. So, I mean, I would submit that there is grounds for dismissal under 1334, but the issue is how you get there. I don't understand your argument. If we're not under 1341, then you basically want us to apply state law in a diversity case. Is that what you're saying? Correct, Your Honor. I mean, I think there was subject matter jurisdiction we removed under CAFA. There was a diversity jurisdiction under the CAFA. Correct. 1332D. Correct. And so that gets you in the court, but then there's a more particularized jurisdictional case under 1341, which is also jurisdictional, right? Correct, Your Honor, it is. I mean, the assertion – And the Fredrickson case was a clear, analogous application of the Tax Injunction Act and the collateral – and the doctrine, the comity doctrine the Supreme Court adopted is parallel to it. It sort of fulfilled the Tax Injunction Act, basically saying whether you're seeking an injunction or seeking a refund, if it is provided – if that's governed by state – state provides efficient remedy for that, we don't have jurisdiction. Isn't that what the holdings are of these cases? That is the holding. I believe you've accurately stated the holding in Fredrickson. The Starbucks case. The Starbucks case is correct, but, Your Honor, I think in this particular instance, there are distinguishing factors because of the way in which this case was stated by the plaintiff. The plaintiff brought essentially a consumer class action, alleging that the charge of sales tax violated a Maryland statute concerning how much can be charged for medical records. I understand, but that's a challenge to the tax, and the Supreme Court handled that in the comity doctrine. They extended the Tax Injunction Act to include the claim for a refund of taxes. I don't disagree with that, Your Honor. I think I'm simply suggesting that in the procedural posture of this case, the district court had jurisdiction to consider the argument. The Seventh Circuit case involved – I'm seeming to remember there was a Seventh Circuit case that involved the Tax Injunction Act, and the Seventh Circuit case actually may have reached some merits because of the fact that it was between, nominally at least, between two private parties. That's correct, Your Honor, and that's exactly why we commend that case to you. We think procedurally it's very similar to this case because, like this case, a private party brought a claim against a private party, Walmart, that was collecting taxes for the return of that money. And the Seventh Circuit found under those circumstances that the TIA did not apply because it was not a claim that threatened an entire tax structure. If we felt that the Tax Injunction Act applied, would we be setting up a circuit split with the Seventh Circuit? I believe that that would be true, Your Honor, yes, because I think it would be difficult, if not impossible, to reconcile the Seventh Circuit's decision in Walmart with the decision here that it was wrong for Judge Titus to make a decision that the Voluntary Payment Doctrine in Maryland and the administrative remedy that's provided there bars this claim against a private party. What I'm interested in, in the bottom line, is whether you get at it through the Tax Injunction Act or whether you get at it through the exclusivity of the Maryland administrative remedies. The point is, at bottom, the state's collection of state taxes is basically an attribute of sovereignty. And it's its own doggone business. And the federal courts shouldn't be jumping into it and disregarding a state remedy and further pulling in all sorts of state private parties when the state didn't want it to happen and provided the remedies precisely so that this kind of suit wouldn't happen. And, you know, how we get there? I can think of lots of ways. The Tax Injunction Act has the Seventh Circuit problem. But that doesn't... There's still multiple other ways of getting at this. I agree, Your Honor. Let me ask a question. So I think you heard earlier that I understand Judge Wilkinson's concerns, but obviously you were the one who brought this case into federal court. You sought to have it removed. But assuming we have jurisdiction, I heard your opponent argue that the administrative remedy in this case is not an efficient one because he is not a taxpayer, wouldn't be able to benefit from that process. Why is that? I assume you disagree. We disagree completely, Your Honor. Certainly. Your Honor, I believe that argument that the administrative remedy is not available to him because it proceeds from this erroneous argument they make that Health Port, the vendor, is actually the taxpayer, is actually the tax collector. And so they're saying, under the language of 13901A2, we can't go after that remedy because that remedy has to be made to the state and the state was not the tax collector. And the reason we disagree with that entirely is for all the reasons that have been stated here, which is, as the vendor, we are required by law to serve as a trustee for the state in collecting the taxes. The state was, in fact, the tax collector. We were just their trustee and agent. Is there any dispute that, in fact, those monies were remitted to the state? That issue was never reached, Your Honor. I can tell you as counsel they were remitted to the state, is my understanding, but that issue was never reached on the record. As a matter of fact, the plaintiff made no evidence to the contrary. No, they had absolutely none. They made that allegation not even, I think it was a little disturbing, not even on information and belief. They made the allegation, conflicting allegations, that we did remit it and that we didn't remit it. And whichever way it was, they wanted that to benefit them. But there's no evidence in the record whatsoever that we did not, as a reasonable commercial actor, collect these taxes and then remit them to the state. I mean, obviously, it would only dissuade consumers from purchasing our services if we charge taxes that are not due. It doesn't benefit us at all. I believe there's a suggestion, an argument by them that we do benefit because we get a small little cut of what we remit to the state, but that cut is capped at $500 per annum. So, obviously, there's no record, there's no evidence, there's no factual allegations that we did not remit that money to the state. So the administrative remedy, we feel, is absolutely available. 13901A2 applies to any tax that is collected, any fee that is charged. And the essence of this case, obviously, is the plaintiff doesn't want to do that. He doesn't want to pursue an administrative remedy for $23. They want to pursue these grandiose class action claims for consumer fraud and Fair Debt Collection Act. But that's not what this case is. Ultimately, this is a case for a refund of $23 in taxes. And for all the reasons that we've stated in our briefs, there's an administrative scheme that is exclusive because the Maryland legislature has provided for it. It's based on the voluntary payment doctrine that goes back over 150 years in Maryland. The Maryland legislature has provided that remedy as the exclusive remedy. And Maryland courts make abundantly clear that it doesn't matter what label you place on it. I mean, the plaintiff wants to characterize this as a case where it's a consumer case or it's a case of a patient trying to get records. Well, you know, anytime someone's trying to get taxes back, and particularly sales taxes, you can always characterize yourself as a consumer. I mean, that's no answer to the problem, which is doesn't this open the floodgates to litigation, class action litigation about the charging of sales tax. Those disputes properly belong under Maryland law before the comptroller. And even if that were not so, that hasn't been the thrust of our discussion today, but even if that were not so, there simply are no plausible claims made against health court in this case. They make a claim for constructive fraud. We don't need to get that far. You certainly don't, Your Honor. You absolutely don't. So I think, but to address the issue that was raised earlier, we do think, as Your Honor said, there are multiple roads to roam under these circumstances. We believe that there was subject matter jurisdiction. We did remove to federal court, based on it being a diversity case, based on the Class Action Fairness Act. But that did not, it does not rob the court of subject matter jurisdiction to argue, as was done in the Walmart case, there is an exclusive remedy here provided by state law, dismiss on that basis. But we agree, dismissal is what's warranted here one way or the other. They have asked procedurally for a remand. We would submit that a remand to state court would be futile because this case would be just as improper being brought in the first instance in the circuit court of Maryland as it was in a district court because the same arguments would apply. There's an exclusive remedy that bars bringing the case in the first instance in a circuit court of Montgomery County. And unless the Court has any further questions, thank you very much for your time. Thank you, Mr. Farr. Mr. Nace, you have some rebuttal time. Thank you, Your Honor. I appreciate it. First of all, I just want to be clear, we disagree that the remedy is exclusive. In Maryland, the presumption is that it's primary, and then if it's primary, it can be rebutted under the Zipone factors. And under the Zipone factors in this case, and the most important statement from that case is that where the alternative judicial remedy is entirely independent of the statutory scheme containing the administrative remedy, the Maryland Consumer Protection Act is independent of the administrative remedy, and the expertise of the administrative agency is not particularly relevant, the Court has held that the administrative remedy was not even intended to be primary and that the plaintiff could maintain the independent judicial cause of action without first invoking and exhausting the administrative procedures. There is a state law issue here as to whether Mr. Gwodes has to go through the administrative procedure or not. How do you handle Bowman case? Bowman case said, as our cases make clear, that administrative remedy is exclusive. That is the remedy to go against the, under the tax scheme. So what Bowman, first of all, Bowman was a case brought by a taxpayer against government tax collectors. And what they stipulated to that on the second page of that opinion was that they didn't have any other statutory remedy. They agreed with that. We disagree with that. We have other statutory remedies in this case. And what they found was the voluntary payment doctrine blocks common law claims in the state of Maryland for the collection of taxes. So you got no statutory claim. You got the voluntary payment doctrine barring common law claims for the collection of taxes. Therefore, that the only remedy you have in the Bowman case is the administrative remedy. But Supone came in and pointed that out. It's been said that Bowman and specifically the White v. Prince George's County case, another tax case that they rely on. And Apostle. And Apostle. It says those cases sort of haphazardly used the word exclusive. It says it haphazardly. They say basically when you're challenging the tax, that's the exclusive remedy under state law. But in Supone, they explained. They said it's really primary, but, and it's a rebuttable presumption that it's primary. This is all state law. Where there is a statutory authorization for a refund and a special statutory remedy set forth, that remedy is exclusive. That's Apostle. Right. They didn't talk about primary and all these other doctrines. They're basically saying the state legislature has provided a remedy through the tax code. And they make it very clear that money is not the money of the vendor. The vendor collects the tax. One section says they collect the tax. The next says that they are the trustee of the state and they are directed and authorized to collect the tax. And they have to remit it to the state. And if a taxpayer, which is your client, how many dollars, what is it, $23, pays that tax and protests it, you're going to have to go through the remedies provided by the state statutory tax law. That's what those cases, I think, say. I think what they say is that when there's no alternative remedy and then you apply, the rebuttable presumption is primary, but it is rebuttable. That's what those cases say. Now, let's be clear. Health Port can go through the administrative remedy, get this money, and redistribute it to the people who wrongfully paid this tax. There's no question. I don't know if Health Port can do it. It says a claimant who pays to the state a tax, tax fee, interest, or other penalty that is erroneously, illegally, or wrongfully assessed or collected in any manner authorizes an administrative refund claim by a claimant who pays to the county, municipal corporation, tax fee, et cetera. And they say that, in our cases, make clear that administrative remedy is exclusive. Right. The administrative remedy is exclusive because taxpayers don't have common law claims. And without an alternative judicial remedy, it goes from primary to exclusive. Why do you say it's a common law claim? It's a statutory authorization for you to get your tax back. That's right. And they tried to turn it. In the Bowman case and the Apostle case and the White case, they tried to turn it into a common law claim. And they said you can't do that. You need an alternative statutory remedy. And all I'm saying is there's a very serious question of Maryland law here. And if we believe that this is a state tax matter, this should be handled in Maryland court. No, not in Maryland court. The Maryland legislature didn't want it handled, at least in the initial instance, in Maryland court. And that's the whole point. It's not going to be handled in a class action in Maryland court. I see I'm out of time, Your Honor. All right. We would like to come down and greet counsel. And then we'll take a brief recess.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, Albert Diaz